IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL ACTION NO. H-10-197 |
| | § § | |
| SIDDARTH OBEROI | § | |

**ORDER**

Pending are Defendant Siddarth Oberoi's Motion for Judgment of Acquittal or for a New Trial (Document No. 177), Defendant's Supplemental Motion for New Trial (Document No. 191), and Defendant's Motion for Release Pending Sentencing (Document No. 194). The Government has filed a response in opposition to each motion (Document Nos. 177, 191, 198), and Defendant has filed Replies (Document Nos. 199, 200). After having carefully considered the motions and briefs, the record of the trial proceedings, and the applicable law, the Court finds for the reasons set forth below that Defendant's Motion for Judgment of Acquittal or for a New Trial (Document No. 177), Defendant's Supplemental Motion for New Trial (Document No. 191), and Defendant's Motion for Release Pending Sentencing (Document No. 194) should all be denied.

Defendant Oberoi was charged in a superseding indictment, along with one co-defendant, Steven T. Carr, with conspiracy to interfere with commerce by threat or violence in violation of

18 U.S.C. § 1951 (Count One), and interference with commerce by threat or violence in violation of 18 U.S.C. § 1951, 2 (Count Two). (Document No. 11). Both Defendant Oberoi and Defendant Carr, who were tried separately by different juries, were found guilty of both counts. Defendant Carr's conviction and sentence was affirmed by the United States Court of Appeals for the Fifth Circuit, United States v. Carr, 2012 WL 1003572, at *2 (5th Cir. Mar. 26, 2012) (unpublished op.). Defendant Oberoi is awaiting sentencing.

Oberoi contends in his Motion for Acquittal that: (1) "[t]he Superseding Indictment does not charge, nor did the Government prove, that there was an agreement between the defendant and co-defendant Carr to rob Pagarani or otherwise affect interstate commerce"; and (2) "[t]he Government failed to prove any direct or substantial indirect effect on interstate commerce." Defendant's Motion for Acquittal (Document No. 177), at 2, 6. In his Supplemental Motion for New Trial, Oberoi additionally claims that: (1) "it was reversible error to allow the prosecutor to inject the spectre of organized crime and the 'mafia' into [the] trial"; (2) "the evidence did not support [a] conviction for interference with interstate commerce"; (3) the prosecutor made numerous improper comments and arguments during his closing argument;[1] and

---

[1] Oberoi alleges that the prosecutor's comments shifted the burden of proof, that the prosecutor's argument violated the "Golden Rule," that the prosecutor made jingoistically charged comments, and that the prosecutor improperly commented on the credibility of the witnesses.

2

(4) that his trial counsel was ineffective. Supplemental Motion for New Trial (Document No. 191) at 1, 5, 6-11, 11-25.

On a post-verdict motion for judgment of acquittal, the Court

> must determine whether the relevant evidence, viewed in the light most favorable to the Government, could be accepted by a reasonably-minded jury as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt.

United States v. Burns, 597 F.2d 939, 941 (5th Cir. 1979). On a motion for new trial, FED. R. CRIM. P. 33(a) provides that the "court may vacate any judgment and grant a new trial if the interest of justice so requires." The late distinguished scholar Charles Alan Wright succinctly described the separate standards that apply to a motion for judgment of acquittal and motion for new trial as follows:

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.
>
> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted.
>
> It has been said in older cases that on such a motion the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to

> grant a new trial on this ground should be invoked only
> in exceptional cases in which the evidence preponderates
> heavily against the verdict.

3 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 553 (2d ed. 1982) (footnotes with citations omitted); *see also* 3 WRIGHT, KING & KLEIN, FEDERAL PRACTICE AND PROCEDURE § 553 (3d ed. 2004) (reprinting verbatim Professor Wright's above quoted commentary).

There was ample evidence at trial of an agreement between Oberoi and his co-defendant Carr to rob or extort, or attempt to rob or extort, money from the victim, and that such conduct interfered with interstate commerce within the meaning of the Hobbs Act. Without recounting all the direct and circumstantial evidence, suffice it to say that BNP Imports, owned by Gope Pagarani, had brokered an international shipment of scrap metal to buyers in India, and the transaction involved companies in Florida, New Jersey, and Texas. Upon the shipment's arrival in India, the containers held worthless landfill, not the expected scrap metal, and the buyers would not pay for it. This led to efforts by Pagarani and other parties to recover their losses, which were not immediately successful. The evidence was that Oberoi and Carr then traveled by air to Houston from other states, that together they surveilled Pagarani's home, and that they then confronted him at his business location, where they assaulted him and forced him to write checks to them; that one of the checks that they demanded the victim to write was required to be made payable to Carr in the

4

amount of $25,000, to whom the victim owed no money; that Oberoi and Carr the next morning went together to a bank in Houston, where they were videotaped standing together at the teller's counter, for Carr to cash the $25,000 check; that the bank is a federally insured financial institution that was headquartered in the State of South Dakota; and that Defendants then traveled back to their respective states--Oberoi, with his bundle of post-dated checks, to Florida, and his accomplice Carr, having cashed the $25,000 check, to New Jersey. The foregoing evidence, together with considerable additional proof offered by the Government, viewed in a light most favorable to the Government, could be accepted by a reasonably-minded jury as adequate and sufficient to support a finding of guilt beyond a reasonable doubt that Oberoi and Carr were engaged together in a conspiracy to violate the Hobbs Act. Oberoi's sufficiency of the evidence claim provides no basis for either a judgment of acquittal or a new trial. *See also* United States v. Carr, 2012 WL 1003572, at *2 (5th Cir. Mar. 26, 2012) (unpublished op.).

In moving for a new trial, Defendant misleadingly asserts that the prosecutor on "direct examination" asked the victim if Stephen Carr "could have been connected to the mafia?" Actually, Government counsel asked this question not on direct examination, but on *re-direct examination*. The Government never mentioned the mafia even once during its entire direct examination of the victim.

It was on Defendant's cross-examination of the victim, while pressing him as to why he had not more promptly called the police and reported the event, that the witness, recounting his fear for his family and his child that kept him from promptly seeking the arrest of the offenders, testified:

> A. Well, I don't know what -- what they were capable of doing that because, according to Mr. Carr, that he was a Mafia from New York. And I don't know what --

Tr. at p. 69, l. 12-14 (Document No. 188). Defendant did not object to the testimony he had elicited from the victim on cross-examination.

It was on re-direct examination then, that the Government explored the mafia reference that had been introduced through Defendant's cross-examination, namely, the victim's impression or opinion "that Steve Carr could have been connected to the Mafia," and what he saw or heard or observed that gave him that impression. The victim answered,

> A. Well, he was talking about, basically, all the business that he has done in the past and connected with people in New Jersey. And it's a lot of things -- lot of things that he said. I don't remember --
>
> Q. Did he say anything in particular about your house or home, that contributed to this impression?
>
> A. Yes. He said, "I have some people parked outside your house, in a van; and you're not going to go home today if you" --

Q. He said he had some people?

A. Yes.

Q. And did he say -- did he use the word "people"?

A. Yes.

Q. And did -- I think you said a moment ago he said something about he was connected with some people?

A. Yes. He was connected with Mafia in New Jersey, that's what he said.

Q. Now, did he actually say he was connected to the Mafia or did he say he was just connected with some people?

A. He said, "connected with some people"; but basically he was directing to Mafia. I mean, he -- he was talking about Italians and all that.

Q. So he didn't use the actual words "Mafia"; but his actions gave you that impression?

A. Exactly.

Tr. at p. 102, l. 20 - p. 103, l. 19 (Document No. 188). Thus, it was the Government that on re-direct examination brought clarity and specificity to the subject of the mafia--bringing out through the victim that Carr had successfully conveyed an *impression* upon the witness as to the fearsome implication of his "connections" but never actually used the word, "mafia." Further in his re-direct examination Government counsel inquired about Steve Carr's previous conduct at the diner in New Jersey, when Carr had acted in a threatening manner. He was asked what he had observed at the diner

7

that "caused you to be afraid and not want to do business with [Carr] and Sid Oberoi?" The victim answered:

> A. Well, that's where they gave me the impression -- that's where they also gave me the impression that he's connected to people such as Mafia in New Jersey --"

Tr. at p. 106, l. 10-12 (Document No. 188). At this point, defense counsel objected to use of "mafia," which at this time the Court overruled with the assurance that Defendant would get [another] chance to cross-examine. Defense counsel did cross-examine, and confirmed again that Steve Carr had "never said he was with the Mafia," and that his impression about Mr. Carr was based on "[t]he way he threatened." Tr. at 113, l. 17 (Document No. 188).

Oberoi relies primarily on United States v. Love, 534 F.2d 87 (6th Cir. 1976) for his argument that witness Pagarani's references to "mafia" in describing his impressions of Steven Carr were so prejudicial that Oberoi was denied a fair trial. In Love, the Sixth Circuit reversed a defendant's conviction where "the prosecutor intentionally and for no proper purpose injected into the trial the spectre of organized crime and the Mafia." Here, not only was the first reference to the mafia elicited by defense counsel during his cross-examination of Pagarani, but Pagarani's testimony had a distinct purpose--to establish and explain his fearful state of mind. See e.g, United States v. Nakaladski, 481 F.2d 289, 301 (5th Cir.) (finding in a case involving extortion

violations under the Consumer Protection Act and the Hobbs Act, that while a witness's testimony about a defendant's connections to "underworld elements, Mafia, and so forth . . . may elicit fear and distaste in the minds of the average juror, it undoubtedly may also cause such a response in the average debtor" and therefore the witness's testimony "was quite relevant in showing [the defendant's] intent to put [the victim] in fear and in showing the method of operation of the conspiracy."), *cert. denied*, 94 S.Ct. 570 (1973); United States v. Gardiner, 463 F.3d 445, 467-68 (6th Cir. 2006) (distinguishing *Love* in a case involving a conspiracy to violate the Hobbs Act and RICO where "the initial statements regarding the mafia were made by witnesses, not by the government."); *see also* United States v. Martinez, 962 F.2d 1161, 1163-1166 (5th Cir. 1992) (finding, on plain error review, no reversible error in the prosecution's questioning of a witness about the witness's affiliation with the Mexican Mafia in an effort to show the witness's bias in favor of the defendant, who was also a member of the Mexican Mafia); United States v. Larson, 526 F.2d 262, 265 (5th Cir. 1976) (finding relevant, in a perjury case, testimony about the mafia associations, weapons and prior threats by the person suborning perjury); United States v. Polizzi, 801 F.2d 1543, 1555 (9th Cir. 1986) ("The evidence presented at trial regarding Matranga's violent character and his self-proclaimed

Mafia connections was relevant to the issue of whether Matranga used extortionate means to collect extensions of credit").[2]

In sum, Oberoi and his Co-Defendant Carr made an unannounced, surprise appearance in Pagarani's office in Houston, Oberoi from Florida and Carr from New Jersey, with Carr dressed as a tough guy wearing chains who then, among other things, employed force against Pagarani, threatened to break Pagarani's head with a deadbolt lock that he held in his fist, and asserted that he knew the location of Pagarani's home while darkly claiming to have "connections." These were the means by which Oberoi and Carr threatened and intimidated Pagarani into writing a series of large checks, which they demanded. That the victim under these circumstances should have concluded that Carr's "connections" were or may be mafia is within the norm of human experience, and the fact that the Government undertook on redirect examination to clarify Pagarani's testimony to show that Carr himself had never used the word "mafia," was not

---

[2] It is noted that defense counsel did not object to nor move to strike Pagarani's "mafia" references when they were first made during defense counsel's own cross-examination, see FED. R. EVID. 103(a); nor did Defendant object to the Government's initial re-direct examination in which the Government elicited testimony to clarify that Carr never used the word "mafia," but rather by his fearsome conduct and statements conjured up in the victim thoughts of the mafia. Id. By time Defendant first objected to a "mafia" reference, moreover, the evidence was uncontroverted that Carr had not used that term, a fact further emphasized when Defendant conducted re-cross examination of Pagarani, which the Court had assured him he would be able to do. At a minimum, there was no plain error affecting a substantial right of Defendant. See Rule 103(e).

at all unfairly prejudicial to Defendant. Under FED. R. EVID. 403, the probative value of Pagarani's testimony, in which the Government was obliged to prove that Oberoi took Pagarani's property "by using actual or threatened force, or violence, or causing the victim to fear harm, either immediately or in the future," Court's Jury Instructions (Document No. 170) at 20, was not *substantially* outweighed by the danger of unfair prejudice.

Oberoi's complaints about various comments by the prosecutor during closing argument were not objected to by defense counsel when the argument was made. In addition, none of the comments, either singly or in combination, when viewed in connection with the entire trial and the prosecutor's entire closing argument, can be said to have affected the outcome of the trial, or resulted in a miscarriage of justice.

Oberoi's claim(s) that trial counsel was ineffective for a variety of reasons is generally not ripe for consideration in connection with a defendant's motion for new trial. United States v. Medina, 118 F.3d 371, 373 (5th Cir. 1997). Oberoi's trial counsel is an experienced and resourceful lawyer who provided a vigorous defense. To assess fairly an effectiveness of counsel claim, the Court should have the benefit of a much better developed record, including evidence of trial counsel's strategy and other possible considerations, which are not fully evident from the trial transcript. Accordingly, because the record is insufficiently

developed to allow full and fair consideration of Defendant's ineffectiveness claims, the Court declines to do so at this time.

After having weighed the evidence received at trial and considered the credibility of the witnesses, and having carefully considered all arguments presently submitted, the Court finds that this is not one of those exceptional cases in which the evidence preponderates heavily against the verdict or persuades the Court that a miscarriage of justice has resulted. In sum, the interests of justice do not require a new trial. FED. R. CRIM. P. 33. In addition, the evidence, viewed in the light most favorable to the Government, does not support an acquittal.

In his Motion for Release Pending Sentencing (Document No. 194), Defendant Oberoi submits that the facts outlined in his Supplemental Motion for New Trial (Document No. 191) describe changed circumstances that merit his release pending sentencing. Defendant concedes that this matter is governed by 18 U.S.C. § 3143(a)(2), which provides that a person who has been found guilty of a crime of violence, as was Defendant Oberoi, shall be ordered detained unless--

> (A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and

> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2)(A) and (B).

First, there is no "substantial likelihood" that Defendant's motions for acquittal or new trial will be granted; indeed, for substantial reasons set out above, the motions are in all things denied.

Second, in its response the Government attorney declines to recommend that no sentence of imprisonment be imposed upon Defendant; to the contrary, Government counsel affirmatively states that the Government "intends to recommend a sentence of imprisonment for the Defendant in this case."

The above two findings require that Defendant be detained pending sentencing without regard to any finding on whether he would likely flee if released. However, and notwithstanding Defendant's countervailing arguments as to why Defendant would not flee, the facts that Defendant is not a citizen of the United States, that he has ties to his native India, and that he is facing a possible sentence of some years of imprisonment, make it highly unlikely that the Court could find from the elevated standard of clear and convincing evidence that Defendant would not likely flee if he were released before sentencing. This need not be determined, however, because 18 U.S.C. § 3143(a)(2)(A) requires the

Court to detain Defendant while he awaits the imposition or execution of his sentence.

For the foregoing reasons, it is

ORDERED that Defendant Siddarth Oberoi's Motion for Judgment of Acquittal or for a New Trial (Document No. 177), Defendant's Supplemental Motion for New Trial (Document No. 191), and Defendant's Motion for Release Pending Sentencing (Document No. 194), are in all things DENIED.[3]

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 17TH day of April, 2012.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[3] Because the parties' detailed and thorough submissions have permitted the Court to rule on the pending motions without necessity for oral arguments or further hearing, Defendant's Motion for Status Hearing on Pending Motions (Document No. 204) and Amended Motion for Status Hearing on Pending Motions (Document No. 205) are both DENIED.